## MILLER v. LAUGHLIN.

(Court of Civil Appeals of Texas. El Paso. April 18, 1912. Rehearing Denied May 15, 1912.)

1. PARTNERSHIP (§ 52*)—EXISTENCE OF RELATION—EVIDENCE — CIRCUMSTANTIAL EVIDENCE.

A partnership may be proved by circumstantial evidence.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 75, 79; Dec. Dig. § 52.*]

2. PARTNERSHIP (§ 52*)—EXISTENCE OF RELATION—EVIDENCE—SUFFICIENCY.

Evidence *held* to justify a finding of the existence of a partnership.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 75, 79; Dec. Dig. § 52.*]

3. PARTNERSHIP (§ 241*) — EXISTENCE—PRESUMPTIONS.

A partnership once proved to exist continues, so far as liability against the partners is concerned, until notice of dissolution is brought home to one seeking to charge the partners.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 479½, 480, 651, 652, 654, 657, 659, 665; Dec. Dig. § 241.*]

4. APPEAL AND ERROR (§ 1066*)—TRIAL (§ 256*)—INSTRUCTIONS—REQUESTS—HARMLESS ERROR.

Where, in an action on a note alleged to have been executed by a firm in December, 1908, a defendant denied that he was a partner and alleged that the note was given on the personal credit of a codefendant, and the circumstances proving the existence of a firm occurred prior and subsequent to the date of the note, and all of the evidence showed a partnership at the time of the making of the note, the submission of the issue whether defendant was a partner at the time of the making of the note "or at any time prior thereto" was harmless; especially in the absence of any requested special charge on the subject.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066;* Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

5. APPEAL AND ERROR (§ 882*)—ESTOPPEL TO ALLEGE ERROR.

In an action against two defendants as partners on a note payable to the wife of plaintiff, a defendant denied that he was a partner and alleged that the money was loaned to a codefendant on his personal credit. Plaintiff stated on cross-examination by defendant that his wife was convinced that defendant and codefendant were partners; the statement being admitted to show whether the transaction was with codefendant individually or with the alleged firm, and the court charged that the jury could not consider it on the issue whether defendant was a partner. *Held,* that defendant, having drawn out the statement by his own question, could not complain on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

6. EVIDENCE (§ 249*)—ADMISSIONS BY PARTNER—ADMISSIBILITY.

Where, in an action on a note brought against two defendants as partners, one defendant denied that he was a partner and alleged that the loan note was to his codefendant on his personal credit, evidence of a conversation with codefendant as to a partnership between him and defendant, had in the absence of defendant, was admissible on the issue whether the money borrowed by codefendant was his individual transaction or the transaction of the firm.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 965–975; Dec. Dig. § 249.*]

7. EVIDENCE (§ 207*) — ADMISSIONS—EXISTENCE OF PARTNERSHIP—DEFAULT JUDGMENT.

A default judgment against a firm in which a person was alleged to be a partner is admissible in evidence to show an implied admission by such person that he was a partner; he having been duly served with process.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 707–712; Dec. Dig. § 207.*]

8. BILLS AND NOTES (§ 534*) — ATTORNEY'S FEES—RECOVERY.

A stipulation in a note for attorney's fees of a specified per cent. of the principal is in the nature of a contract of indemnity and fixes the amount of attorney's fees, in the absence of plea and proof that the per cent. is unreasonable.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946–1947; Dec. Dig. § 534.*]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by R. C. Laughlin against P. J. Miller and another. From a judgment for plaintiff, defendant named appeals. Affirmed.

King & Isaacs, of Abilene, and Theodore Mack, of Ft. Worth, for appellant. Dallas Scarborough and H. N. Hickman, both of Abilene, for appellee.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

PETICOLAS, C. J.   This was a suit by one R. C. Laughlin on four promissory notes executed to the order of his wife against D. R. Wall & Co., alleged to be a copartnership composed of D. R. Wall and P. J. Miller. The appellant answered by general denial and alleged that the money was loaned to D. R. Wall upon his personal faith and credit, and was used by him for his personal benefit, and not for the use and benefit of the grocery business of D. R. Wall & Co., and denied under oath that Miller was a partner.  The case was tried on special issues and resulted in a judgment for plaintiff against Wall and Miller individually and against D. R. Wall & Co. for principal and interest, but not for attorney's fees.

[1, 2] The first question raised by the assignments is whether or not a partnership can be proved, or one can be proved to be a member of a partnership by circumstantial evidence.

As illustrating the specific manner in which the question arose in this case, we make the following concise statement of some of the evidence: One Bridgman testified that "in 1907 and 1908, during the absence of D. R. Wall, one of the clerks in the store came to me in the presence of P. J. Miller, stated that he was out of a certain line of goods; Miller asked me why I did not have the goods, and if the jobbers had cut me off from credit; he stated that if they had he would see that I got the goods, got any goods that I needed. At another time he asked me to push a couple of accounts against certain parties. Miller and Wall both instructed me to buy any goods that were needed by the firm. I quit the employment because my salary was cut. Miller and Wall were in the back of the store talking, and Wall came to me and told me my salary would have to be cut. Miller owned a two-thirds interest in the business." Rankin testified: "I had a conversation with Miller. It was the day Wall closed up. Miller told me that there had been a dissolution of the partnership between him and Wall and that he could not pay the bill that D. R. Wall & Co. owed me, which I had gone around to collect. He said he had nothing to do with it, that he was no longer a partner with Wall, that I ought to know it; that he had had it published in the daily papers and that ought to have put me on my guard." A dissolution notice published in the "Abilene Reporter" of date January 24, 1909, was put in evidence; it was signed by D. R. Wall & Co. Judgments were offered in evidence in suits against D. R. Wall & Co. in which Miller was alleged to be a partner and was served. The fact that the judgments were permitted to go by default was shown. J. T. Bridgman testified: "I had a conversation with Miller in which he was talking about his son. He said he wanted his son to take a business education so that he could give

him his interest in the store with Wall & Co." L. D. Kennedy testified that, seeking to collect an account of Miller against D. R. Wall & Co., Miller told him that he had not had anything to do with D. R. Wall & Co. since the 1st of January. Harris testified: "I was employed by Wall & Co. and left their employ in April, 1908. Wall told me expenses had to be cut down; that I could quit on the 20th. Before the 20th of the month I asked Miller why I was to be discharged, and Miller replied that it was immaterial with him which one of the clerks quit, but the expenses were too great, one of the clerks had to quit. He said he wanted to put his son, Jay, in the store so he could learn the business." At another time Miller looked at a team used in the business, stated that one of the mules needed rest; that he would send in a sorrel mule from the farm to take the place of the mule that needed rest. The plaintiff testified: "I had a conversation with Wall subsequent to the time this matter matured. Miller was present. Wall told me that he had sold out to Miller; that the money would come from Miller; that Miller was going to pay it. Miller did not deny the statements made by Wall in his presence." Wall testified that the money borrowed went into and was used by the business of D. R. Wall & Co.

The theory of the defendants was that Miller had never been a partner, that he had simply loaned Wall money, and both so testified. The court submitted as a special issue whether or not Miller was a partner, and we are clearly of the opinion that the evidence indicated, although in its nature circumstantial, was sufficient to support the issue, and, the jury having answered that Miller was a partner, we cannot revise their finding. We know of no fact, relation, or condition known to the law that cannot be proved by circumstantial evidence as well as by direct. If it is within the law to convict one of crime through circumstantial evidence, surely it is within the law to prove one a partner by circumstantial evidence. Indeed, if circumstantial evidence could not be resorted to, persons dealing with the firm could only hold the one or the other member according to whether the partnership was denied or not. Newberger v. Heintze, 3 Tex. Civ. App. 259, 22 S. W. 867; Brannin v. Company, 30 S. W. 572; Davis v. Bingham, 46 S. W. 840.

[3, 4] Appellant's third assignment of error complains of the form in which the court submitted the special issue. The issue was submitted in this language: "Was Miller a partner, a member of the firm of Wall & Co., at the time the notes sued on in this case were executed, or at any time prior thereto?" —the part objected to being the words "or at any time prior thereto."

There are two or three matters to consider in determining whether the form of this

question was erroneous or not: (a) No special charge correcting the form of this question was presented to the court by appellant, so far as the record shows. (b) It is a general rule of law that a partnership once proved to exist continues, so far as liability against the respective partners is concerned, until not only dissolution is shown, but notice of the dissolution is brought home to the party seeking to charge the respective members. Devine v. Martin, 15 Tex. 25. (c) These notes were alleged to have been executed in December, 1908, and the circumstances tending to prove partnership took place at many times prior and subsequent to the execution of the notes; the plaintiff's allegation being that the partnership existed from January, 1908.

It is apparent that, in so far as the question might be construed to refer to a time prior to January, 1908, it would be erroneous. It is equally apparent, we think, that, in so far as it referred to any time from January 1, 1908, up to the date of the execution of the notes, it was not erroneous. As all of the testimony tends, in effect, to show the existence of a partnership at the time of the execution of the notes, although the date of some of the circumstances relied on to show it was prior thereto, the jury could not have been misled thereby; therefore, in so far as there is an ingredient of error in the form of the question, it is clearly harmless, and this is especially true in view of the fact that appellant did not present a special charge clearing the matter up. Therefore the assignment of error is overruled.

[5] The seventh assignment of error is addressed to a statement made by Laughlin that she (his wife) was thoroughly convinced that they were partners. This testimony was elicited on cross-examination by appellant under the following circumstances: Appellant asked the witness in detail about the lending of the money to D. R. Wall & Co.; it was shown that Wall got the money at two or three different times. The witness in response to the question said that Wall did not have the same conversation every time he borrowed money. Then appellant propounded this question: "Wall came up two or three times and had the same conversation every time, didn't he, Mr. Laughlin?" The witness answered: "No, not every time he didn't. She was fully convinced that they were partners." The court qualified the bill of exception by showing that the evidence of Laughlin as to the conversations with Wall was admitted to show whether the transaction was with Wall individually, or with Wall & Co., and the court instructed the jury that they could not consider the same on the issue of whether or not Miller was a partner.

We do not think appellant can complain of the matter elicited by him on cross-examination under these circumstances. Railway Co. v. Cockrill, 72 Tex. 613, 10 S. W. 702; Smith v. Oldham, 26 Tex. 537. In any event, however, it is clearly apparent that, if we were to assume the testimony inadmissible, it was not reasonably calculated to have had any effect on the verdict, and therefore the case should not be reversed for that reason.

[6] The ninth assignment of error is that the court erred in admitting the testimony of R. C. Laughlin wherein he was permitted to narrate a conversation had with the defendant Wall as to an alleged partnership between Wall and Miller in the absence of Miller; the proposition being that the declarations of one partner are not admissible against his alleged copartner to prove the existence of a partnership between them which the latter has denied.

There is no question that the proposition states a correct general rule of law, but it is not applicable to the facts in this case. In the case of Robinson v. Bank, 98 Tex. 184, 82 S. W. 505, our Supreme Court definitely settled these rules of law. It is unqualifiedly held in that case that declarations of one partner are not admissible to show the other member of a partnership, but Judge Gaines in that case also held: "Where the question of partnership is involved, and evidence tending to show a partnership, sufficient to authorize the jury to find its existence, has been introduced, then the declarations of one of the alleged partners are admissible in so far as they tend to show liability on the part of the partnership. * * * The declarations of a partner are admissible as against the firm, because he is the agent of the firm, hence, if the partnership be disputed and there be evidence to show a partnership, the declarations of the alleged partner which go to show the partnership's liability for the debt are admissible and should go to the jury, with the instruction that they are to be disregarded provided they should find that the fact of partnership is not established." The qualification of the court to this bill of exception shows that at the time the evidence was introduced the plaintiff stated that it was offered only upon the issue as to whether or not the money borrowed by D. R. Wall was his individual transaction or the transaction of the concern known as D. R. Wall & Co., and the court at the time instructed the jury that they could not, and must not, consider such testimony for any purpose whatever in determining the issue of whether or not Miller was a partner, but they could only consider same in passing upon whether said transaction was an individual one or was the transaction of D. R. Wall & Co. The defendant in his answer alleged that the plaintiff loaned the money to D. R. Wall upon his own personal faith and credit and for his individual use. For the reasons indicated, the assignment is overruled.

There are other assignments directed to the admission in evidence of the testimony of witnesses to whom Miller had made statements tending to show that he was a partner. These were clearly admissible.

[7] The fourteenth assignment of error and others following it are addressed to the admission in evidence of judgments mentioned, supra. The bill of exceptions shows that, at the time the judgments were offered, the court sustained the objection to the same until it was shown that service had been had upon P. J. Miller. These judgments having resulted by default on the part of Miller, we think they were admissible in evidence as a circumstance tending to show an implied admission by Miller that he was, in fact, a partner.

[8] What has been said substantially disposes of all the questions raised, except one: Appellee files a cross-assignment of error to the effect that the court below erred in failing and refusing to render judgment for 10 per cent. attorney's fees. Under the authority of Lanier v. Jones, 136 S. W. 255, and Bank v. Robinson, 135 S. W. 372, we think the cross-assignment must be sustained. The attorney's fees seem to have been excluded below for lack of proof that they were reasonable charges. It is held in the cases cited that the contract for attorney's fees is in the nature of a contract of indemnity that fixes the amount at 10 per cent. of such obligation. In the absence of plea and proof that such a per cent. is unreasonable, the court is authorized to act upon the amount of such fees as agreed upon and enter judgment accordingly.

It is therefore ordered that the judgment of the trial court be reformed and here rendered for 10 per cent. attorney's fees in addition to the amount recovered below, and, as reformed, that it be affirmed.