GEMBLER v. BAKER. (No. 5852.)

(Court of Civil Appeals of Texas. San Antonio. May 2, 1917.)

PARTNERSHIP &⊂⊃55—ACTION AGAINST PARTNERS—EVIDENCE.

In an action on a guaranty, evidence *held* sufficient to sustain a finding that defendant and his son, sued as partners, were liable as such.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 75, 78, 79, 81.]

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by A. P. Baker against W. F. Gembler and another in justice's court. From a judgment on certiorari to the county court, defendant W. F. Gembler appeals. Affirmed.

Diedrich A. Meyer, of San Antonio, for appellant. Lewright & Douglas and Louis H. Porter, all of San Antonio, for appellee.

FLY, C. J. This is a suit for $164, instituted in the justice's court by appellee against appellant and W. J. Gembler. Judgment by default was taken in the justice's court, and the cause was then carried by certiorari to the county court, where it was tried by jury, resulting in a verdict and judgment for appellee in the sum of $164. W. F. Gembler alone appeals.

The two Gemblers, appellant being the father of W. J. Gembler, were sued as partners, and the only issue in the case was that of partnership. The court instructed the jury:

"If you find from the evidence that the two defendants were partners, then you will return your verdict for the plaintiff against both of the defendants, but if you do not find they were partners, you will return your verdict against W. J. Gembler and in favor of W. F. Gembler."

The jury returned the following verdict:-

"We, the jury, find for the plaintiff against W. F. Gembler and W. J. Gembler for the sum of $164.00."

That was a finding, under the charge, that appellant was a partner of W. J. Gembler. The issue as to partnership was one of fact, to be determined by the jury, and the verdict finding a partnership cannot be disturbed if there is any testimony to sustain it. The facts are that the property known as Exposition Park was leased by the West End Lumber Company to the firm of Rippey & Rossy for the year 1915, appellant and W. J. Gembler guaranteeing the performance of the terms of the contract by Rippey & Rossy. When the latter firm failed to carry out their contract, of course the Gemblers became liable on their guaranty and the most natural thing for them to do would be to take charge and run the park themselves in order to save themselves from liability. However, they swear that W. J. Gembler, who does not seem to be the monied man of the concern, took up the contract alone. The jury, however, had circumstances before them from which they could draw the reasonable conclusion that, father and son being on the bond, and the father being the man financially responsible, he would, to protect himself from liability, prevent a breach of the contract by running the park associated with his son. When appellee went to appellant to obtain his wages for work performed in the park, appellant told him to wait, and he (appellant) would pay him, and on another occasion appellee saw appellant in the cotton field and asked him for pay, and he promised to come in Saturday and pay some money. Appellee swore that he "heard appellant giving orders around there and making suggestions about the operation of the park." Appellant prevented the bookkeeper from discharging a drunken employé at the park, and said that the man was working for him. Appellee

---

&⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

also testified that W. J. Gembler sent him to appellant for his pay. He sent others to appellant for their pay. Appellant never repudiated the debts, but always said if time was given he would pay the debts. Gregory and F. M. Baker corroborated appellee in his statements as to the promises of appellant to pay him. J. G. Chilcoat testified that he was present at a meeting of what he called "the right holders out there," which was held to elect a manager, and appellant made the statement "that as long as he had anything to do with the park that Willie would be manager." "Willie" was W. J. Gembler. Appellant said to Chilcoat: "Don't worry; you will get your money." Appellant went to the park every Saturday, and always went to the bookkeeper. Under the terms of the contract appellant and his son were, to all intents and purposes, colessees with Rippey & Rossy, for they fully guaranteed the contract "to the same extent and as are the said lessees hereby bound." B. G. McCown fully corroborated Chilcoat as to what appellant said about electing "Willie" manager at the meeting of the "right holders."

Appellant and his son denied that they were partners, but the jury were justified in believing that they were from the strong circumstances surrounding the running of the park. It is almost inconceivable that appellant, who was the guarantor of the performance of the contract, and was responsible for the rent, would retire and allow his son to operate the park. He did not surrender the matter to his son, but took part, when present, in the conduct of the business. Avocato v. Dell'Ara, 77 S. W. 47. Of course there is no direct evidence that a partnership existed, but the circumstances lead to that conclusion, and, as said in Miller v. Laughlin, 147 S. W. 711:

"We know of no fact, relation, or condition known to the law that cannot be proved by circumstantial evidence as well as by direct. * * * Indeed, if circumstantial evidence could not be resorted to, persons dealing with the firm could only hold the one or the other member according to whether the partnership was denied or not."

It is usually the case that the one denying his liability as a partner is the only one who is solvent and able to pay.

The judgment is affirmed.