Julian W. GLASS, Jr., et al., Appellants,

v.

Fred G. CARPENTER et al., Appellees.

No. 13509.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 18, 1959.

Rehearing Denied Dec. 16, 1959.

John D. Wheeler and H. W. Moursund, San Antonio, Golden, Croley, Howell, Johnson & Mizell, Dallas, Walter Stout, L. M. Bickett, San Antonio, Denver Perkins, Gonzales, for appellants.

Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellees.

BARROW, Justice.

This is a suit filed by Julian W. Glass, Jr., and Robert S. Randolph, in their capacity as trustees, against various parties defendant, alleging the assertion of claims by beneficiaries of four trusts known as Henderson trusts, and also that Elizabeth P. Henderson, alleged life beneficiary in all four of the trusts, had died on or about November 21, 1957. Plaintiffs also sued for construction of certain provisions of said trust instruments, to determine the law applicable thereto, and to determine the powers, responsibilities, duties and liabilities of the trustees, and also sought the consideration and approval of the accounts of said trustees. Plaintiffs also seek a declaratory judgment with reference to certain matters involved in the suit. The suit was also brought against one Frank J. Perry, seeking to declare an instrument in writing to be null and void, said instrument being in the nature of an assignment executed by Elizabeth P. Henderson to Frank J. Perry, dated September 10, 1957, and on its face purporting to convey to said Perry all her right, title and interest, including

all sums due and to become due her, in and under the four Henderson trust agreements, on the grounds of fraud, undue influence and lack of consideration, and also on the ground that such assignment was contrary to and prohibited by each of the four trust agreements.

Two of these trust agreements, one executed by Frank C. Henderson, and one executed by Elizabeth P. Henderson, in which her husband, Frank C. Henderson, joined, were dated December 13, 1941, and two of these trust agreements, one executed by Frank C. Henderson, and one by Elizabeth P. Henderson, in which her husband, Frank C. Henderson, joined, were dated December 27, 1941.

The defendant Frank J. Perry, by his answer, joined in issue the matter of the validity or invalidity of the assignment by general denial, and by cross-action alleged that the four trusts terminated upon the death of Elizabeth P. Henderson, the survivor, and sought recovery of such property as might be found to be that of Elizabeth P. Henderson in the four trusts.

Motions for severance were granted, and the court entered an order to the effect that the only issue to be tried in the separate case is the validity or invalidity of the instrument dated September 10, 1957, purporting to be an assignment from Elizabeth P. Henderson to Frank J. Perry. In connection with the order of severance, the defendant and cross-plaintiff Frank J. Perry announced in open court that he recognized that Elizabeth P. Henderson and Frank C. Henderson conveyed all such titles as they or either of them had at that time to all the properties described in the four trust instruments. An order was entered in accordance therewith.

The cause was submitted to a jury upon the issues of fraud, undue influence and lack of consideration, with respect to the assignment from Mrs. Henderson to Frank J. Perry. The jury returned a verdict in

favor of Frank J. Perry, and the court rendered judgment that the assignment did convey all the right, title and interest of Elizabeth P. Henderson in and to the four trust estates. This appeal is from that judgment.

Each of the four trust instruments expressly provided that upon the death of the survivor of either Frank C. Henderson or Elizabeth P. Henderson, the trustees should divide the then principal and the accumulated income of the trust estates among certain beneficiaries named in the instruments in stated portions or percentages.

Each and all of the four trust instruments conveyed the property therein mentioned to Fred C. Hall, J. Wood Glass and Harold Rorschach as trustees. Fred C. Hall died in September, 1951, J. Wood Glass resigned as trustee in February, 1952, and his son, Julian W. Glass, Jr., was appointed trustee at his request. Later in 1952 J. Wood Glass died. In 1954, Harold Rorschach resigned as trustee, and appellant, Robert S. Randolph, was appointed trustee by the only remaining trustee, Julian W. Glass, Jr. Frank C. Henderson died in August, 1943, and Elizabeth P. Henderson died November 21, 1957.

The Frank C. Henderson Trust No. 2 contained the following provision:

"As a part of the consideration herein, the trustees agree to pay * * * to grantor, during his natural life time, the sum of $25,000 per year at such times and in such amounts during each annual period as may be convenient to the grantor."

All of the trust agreements contained provisions that the trusts should continue and not terminate, during the life of the survivor of Frank C. Henderson or Elizabeth P. Henderson.

The written assignment from Elizabeth P. Henderson to Frank J. Perry, executed

on September 10, 1957, insofar as is pertinent, reads as follows:

"I Elizabeth P. Henderson, for value received do hereby assign, transfer and convey to Frank J. Perry all my right, title and interest, including all sums due and to become due in and pursuant to the following trust agreements, namely:" (Then follows a description of the four trust agreements.)

■ By their first point appellants contend that the judgment is fundamentally erroneous because the estate of Elizabeth P. Henderson was a necessary and indispensable party to the suit. Appellee, Perry's, cross-action was against appellants, Glass and Randolph, as trustees and no one else, seeking to recover property alleged to be in their hands as such trustees, and which he alleged passed to him under the assignment.

■ It is well settled in this State that an assignor is not a necessary party to a suit brought on the assignment by the assignee against the obligor on the claim assigned. San Antonio & A. P. Ry. Co. v. Cockvill, 72 Tex. 613, 10 S.W. 702; Peck & Hills Furniture Co. of Texas v. Long, Tex.Civ.App., 68 S.W.2d 288; First State Bank & Trust Co. v. First Bank of Truscott, Tex.Civ.App., 32 S.W.2d 494; Senter v. Garland, Tex.Civ.App., 298 S.W. 614; El Paso & S. W. Co. v. Hudspeth, Wallace & Harper, Tex.Civ.App., 255 S.W. 772.

Appellants cite the opinion of the Supreme Court in Royal Petroleum Corporation v. McCallum, 134 Tex. 543, 135 S.W. 2d 958. That case is not in point. It was a suit by the assignor to cancel the assignment, in which the plaintiff dismissed one of the assignees. The Court held that in such suit to cancel, all parties to the instrument sought to be cancelled, as well as all parties whose rights will be affected by the cancellation are necessary parties, whereas, in the instant case none of the appellants are parties to the assignment and none of their rights are affected thereby. The point is overruled.

Appellants urge that the assignment is invalid as to the interest, if any, of Elizabeth P. Henderson in each and all of the trust instruments, for the reason that such assignment by her is prohibited by and contrary to the terms of the trust instruments, when these instruments are construed generally as to all the rights, duties, powers and obligations of the trustees. Under the pleadings of the parties and the severance order, which we have considered, we have reached the conclusion that we can and should construe the trust instruments to the extent necessary to determine the validity of the assignment.

■ The general rule throughout the American jurisdictions is that a settlor may create a trust in favor of some third party and prohibit the assignment by such party of the beneficial interest in the trust. This rule prevails in Texas. See, Texas cases cited in 19 A.L.R. p. 27. However, the rule is otherwise in cases where the settlor creates a trust and makes himself the beneficiary thereof. In 54 Am.Jur. 134–135, Trusts, § 166, the rule is stated as follows:

"Public policy does not countenance devices by which one frees his own property from liability for his debts or restricts his power of alienation of it; and it is accordingly universally recognized that one cannot settle upon himself a spendthrift or other protective trust, or purchase such a trust from another, which will be effective to protect either the income or the corpus against the claims of his creditors, or to free it from his own power of alienation. The rule applies in respect of both present and future creditors and irrespective of any fraudulent intent in the settlement or purchase of a trust. It applies even where one seeking to settle or purchase a trust in his own benefit is a spendthrift in fact, and irrespective of the sex or marital or

contemplated marital status of the beneficiary."

Numerous cases have been cited and annotated in 119 A.L.R. 35–39. The reason for the rule has been well stated in Pacific National Bank v. Windram, 133 Mass. 175, as follows:

"The general policy of our law is that creditors shall have the right to resort to all the property of the debtor, except so far as the statutes exempt it from liability for his debts. But this policy does not subject to the debts of the debtor the property of another, and is not defeated when the founder of a trust is a person other than the debtor. In such case, the founder having the entire jus disponendi in disposing of his own property, sees fit to give to his beneficiary a qualified and limited, instead of an absolute, interest in the income. Creditors of the beneficiary have no right to complain that the founder did not give his property for their benefit, or that they cannot reach a greater interest in the property than the debtor has, or ever had. But when a man settles his property upon a trust in his own favor, with a clause restraining his power of alienating the income, he undertakes to put his own property out of the reach of his creditors, while he retains the beneficial use of it. The practical operation of the transaction is that he transfers a portion only of his interest, retaining in himself a beneficial interest, which he attempts by his own act to render inalienable by himself and exempt from liability for his debts. To permit a man thus to attach to a valuable interest in property retained by himself the quality of inalienability and of exemption from his debts, seems to us to be going further than a sound public policy will justify."

■ The rule above stated, that a settlor may not create a spendthrift trust for his own benefit and restrict his power of alienation of his beneficial interest, has been recognized and applied in Texas, McFaddin v. Commissioner of Internal Revenue, 5 Cir., 148 F.2d 570, a Texas case, citing, Griswald, Spendthrift Trustees, § 474, and Bogert, Trusts, § 224, wherein the same rule is stated.

In Booth v. Chadwick, Tex.Civ.App., 154 S.W.2d 268, 274, the Court recognized the rule above stated, but held that where a man is sentenced to the penitentiary he could create a spendthrift trust for his own benefit and restrict his power of alienation during the period of his imprisonment. The Court recognized this case as an exception to the rule. The case of Lanius v. Fletcher, 100 Tex. 550, 101 S.W. 1076, cited by appellants, is clearly not in point. In that case the trust was created by a third person under her will for use and benefit of her daughter. The cestui que trust was not the settlor and owned none of the property placed in trust.

■ In Monday v. Vance, 92 Tex. 428, 49 S.W. 516, cited by appellants, the Supreme Court had before it a case in which the husband and wife executed a deed and conveyed in trust to the trustees the wife's separate real estate, making it the duty of the trustees to hold, manage and control the same for the purpose of making it produce all the income, rents and profits possible, and to use the same for the purpose of furnishing to the wife and her children support and maintenance, and for the education of the children. The husband and wife shortly thereafter conveyed a part of of the land by deed to another person. The Court held that the last mentioned deed, conveying the property was not void, but that the trust deed carved out a usufructuary interest in the property for such support, maintenance and education, and that the trustees were entitled to the possession of the land until the termination of the trust. In making such holding the Court recognized the well-established rule that a support and maintenance trust, particularly in real estate, for the benefit of

married women may by the nature and purpose of the trust restrain the alienation of the beneficial interest. This rule is stated in 54 Am.Jur. 133, Trusts, § 163. That case, therefore, is clearly distinguishable from the present case.

In none of the four Henderson trusts is it made the duty or responsibility of the trustees to support or maintain either of the beneficiaries, nor to manage or use the property to that end. All income from the trusts, and each of them, is made payable directly to the beneficiaries, and may be used or spent in any manner, at any time, and for any purpose which they may desire.

In the two Frank C. Henderson trusts, the trustees are authorized "in their discretion," to accumulate all the net rents, issues, interest, income and profits of and from the trust estates, "or to pay over all or any part of the entire net income from the trust estate to the said Elizabeth P. Henderson, or if she should predecease her husband, Frank C. Henderson," in their discretion, to accumulate the same or pay them over to said Frank C. Henderson.

The Elizabeth P. Henderson Trust No. 1, contains the same provision as the Frank C. Henderson Trusts, making her the first beneficiary and him the beneficiary in case she should predecease him.

The Elizabeth P. Henderson Trust No. 2 provides that the trustees shall, at her request, pay over to her all or any part of the entire net income from said trust estate. In both of the Elizabeth P. Henderson Trust instruments, in which her husband joined, she is named as "grantor", and in both, the property conveyed is recognized as her separate property and estate.

All four of the trust instruments contain the restraint against alienation as follows:

"Sixth: This agreement shall be irrevocable, and no interest of any beneficiary hereunder shall be assigned or assignable either by voluntary act of such beneficiary or by operation of law or otherwise.

"No beneficiary shall have any right, power or authority jointly or severally, to sell, convey, transfer, pledge, incumber, mortgage, or in any way dispose of, the whole or any part of the securities or other profits held hereunder, nor anticipate any of the income accruing hereunder, so held in trust for them, respectively, and every interest therein and thereto shall at all times be free from, and not subject to, any debts of each, or either, or all of them, or for any indebtedness, or any claims, demands, or causes of action whatsoever, that any person, corporation, or company, shall, or may have, or claim, or may claim to have, or that may be made against them, respectively, or any, or either, or all of them. This agreement may not be amended, modified, or changed so as to change the beneficiaries hereunder, or so as to provide for any definite payment of principal or income than herein provided for."

The entire transaction can have no other effect than that Frank C. Henderson and his wife have attempted to place their community property, which amounts to several million dollars, in trust for the benefit of themselves, whereby they may, with concurrence of the trustees in three of the trusts, and in the other absolutely, enjoy all or any part of the income, and at the same time have their interest therein freed from liability for debts and claims of creditors. We think it is quite clear that the above provisions, attempting to restrain the power of alienation of the beneficial interest of the settlors, who are at the same time beneficiaries, and attempting to exempt such beneficial interest from liability for the debts of the beneficiary, or attempting to restrain alienation of such interests, are void. It necessarily follows that the assignment of her beneficial interest in the trusts by Elizabeth P. Henderson can not be legally prohibited by such provisions.

■ The appellants complain of the action of the court in admitting certain evidence over their objection. They also complain of the court's failure to submit to the jury their requested Special Issue No. 1, and further contend that the trial court should have granted a new trial on account of jury misconduct. The evidence alleged to have been erroneously admitted relates to the issues of fraud, undue influence and lack of consideration. The alleged jury misconduct relates to their findings on these issues, the only issues submitted, and the only fact issues plead by appellants. The requested issues sought to inquire whether or not Mrs. Henderson received fair and adequate consideration for signing the alleged assignment.

At the outset we are confronted with appellees' fifth and sixth counter-points in which they assert that the appellants have no justiciable interest in the validity or invalidity of the assignment from Mrs. Henderson to Frank J. Perry, such as would entitle them to attack its validity on the grounds of fraud, undue influence or lack of consideration.

Appellants have asserted the invalidity of the assignment from Mrs. Henderson to Perry on the grounds of fraud, undue influence and lack of consideration. This attack is made on the instrument both in their original suit for cancellation and in defense against appellee's cross-action to recover of the trustees on the assignment, upon final accounting. The question, therefore, is whether or not appellants have any justiciable interest such as would entitle them to cancellation on such grounds, and whether or not they have any standing such as would entitle them to urge such grounds in defense against appellee's cross-action.

Inasmuch as the issue of the validity or invalidity of the assignment from Elizabeth P. Henderson to Frank J. Perry was severed from the remainder of the issues, i. e., suit for declaratory judgment, construction of the trust instruments, and general accounting between the parties, and only the issue of the validity or invalidity of the assignment was tried in this cause, the trial court was not called upon, nor are we called upon to determine what property, if any, in any one or more of the trusts, passed by virtue of the assignment. Neither do we have authority in this proceeding to determine such matter.

■ The rule with reference to the necessity for the existence of a justiciable interest in the subject matter in order to maintain the suit for cancellation has been stated in 32 Tex.Jur. 12, as follows:

"§ 8. Necessity for Justiciable Interest.—Only those who have an interest in the suit, and for or against whom there can be a judgment, may become or be made parties. In the language of the Supreme Court, 'It is a rule of universal acceptation that to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity.' In other words the parties must have a general or special interest in the subject matter of the action. The elementary rule that no person may sue upon a contract except he be a party to or in privity with it is but an application of this fundamental principle."

■ To be entitled to maintain a suit for the rescission or cancellation of a contract one must have some interest therein. As a general rule, a party to a contract or a privy therein, and he alone, is entitled to maintain a suit to cancel or rescind it. 12 C.J.S. Cancellation of Instruments § 45, p. 1015, 1016.

"Where sufficient grounds exist for the rescission and cancellation of a conveyance, it may be set aside at the suit of those succeeding to the rights of the grantor. For example, where a deed or other conveyance has been procured by undue influence, and is not ratified by the person making it after

the undue influence has ceased to operate, it may be set aside after his death at the suit of those succeeding to his rights." 12 C.J.S. Cancellation of Instruments § 45, p. 1016.

This principle has been followed in Texas. Hollar v. Jowers, Tex.Civ.App., 310 S.W.2d 721; Edwards v. Williams, Tex. Civ.App., 291 S.W.2d 783; City of Waco v. Akard, Tex.Civ.App., 252 S.W.2d 496.

■ The law is settled that the obligors of a claim may defend a suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

■ The rule is stated in 6 C.J.S. Assignments § 132, p. 1184, as follows:

"A debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, any matters rendering the assignment absolutely invalid or ineffective, and the lack of plaintiff's title or right to sue; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his shoes."

The rule is followed in Texas. In 1 Tex. Jur.Supp. 504, Assignments, § 37, the rule is noted as follows:

"p. 48, n. 15. Suit by assignee having possession and apparent legal title. —'It is the established rule in this state that one having the possession of a written instrument, and the apparent legal title thereto, whether such instrument be negotiable or non-negotiable, may sue thereon in his own name, and that the party bound there-

on cannot resist payment on the ground that such holder is not in fact the owner, but that in equity it belongs to another.' Ormsby v. Ratcliff, (Tex. Civ.App.) 22 S.W.2d 504."

■ Fraud or undue influence (which is a species of fraud) renders the assignment voidable only and not void. 20-A Tex.Jur. 18, Fraud & Deceit, § 6, and numerous causes cited.

■ In a suit by the assignee on a claim against the obligor, the defense that the assignee occupied a fiduciary relationship to the assignor cannot be urged by the obligor, El Paso & S. W. Co. v. Hudspeth, Wallace & Harper, Tex.Civ.App., 255 S.W. 772, nor can the defense of lack of consideration for the assignment be urged by the obligor in a suit on the assigned claim. General Office Service Co. v. Letbetter, Tex.Civ.App., 221 S.W.2d 932; Quinn v. McCurdy, Tex.Civ.App., 187 S.W.2d 595; Hughes v. Dopson, Tex.Civ.App., 135 S.W. 2d 148; F. H. Vahlsing, Inc. v. Hartford Fire Ins. Co., Tex.Civ.App., 108 S.W.2d 947; Kenedy Town & Imp. Co. v. First Nat. Bank of Victoria, Tex.Civ.App., 136 S.W. 558; Pearce v. Wallis, Landes & Co., 58 Tex.Civ.App. 315, 124 S.W. 496; St. Louis Southwestern Ry. Co. of Texas v. Jenkins, Tex.Civ.App., 89 S.W. 1106; Texas & P. Ry. Co. v. Davis, 93 Tex. 378, 54 S.W. 381; 5 Tex.Jur. 27, Assignments, § 21.

In the assignment involved in this case, Mrs. Henderson conveyed to Frank J. Perry the rights, titles and interests which she had in and pursuant to the four trust deeds and nothing more. The assignment does not involve or purport to convey anything belonging to or claimed by the trustees or the other beneficiaries. In his cross-action, appellee makes no attack upon any of the trust instruments. They are admitted to be valid conveyances. It is also admitted that Frank C. Henderson and Elizabeth P. Henderson by the trust deeds conveyed title to all the property mentioned

and described therein and the lists attached thereto. ·Hence the assignment granted to appellee only such property as Elizabeth P. Henderson could have recovered from appellant trustees during her lifetime, and what her estate could have recovered since that time, had it not been assigned to appellee. The record fails to show that appellants are either heirs, devisees or legatees of Elizabeth P. Henderson, or that they or any of them are the personal representatives of her estate. Therefore, none of the appellants have any justiciable interest in, or any standing to attack the validity of the assignment from Elizabeth P. Henderson to Frank J. Perry on the grounds of fraud, undue influence and lack of consideration alleged by them, and the trial court should have sustained appellee's motion for an instructed verdict.

These issues should not have been submitted to the jury, and such rulings, even if error, are immaterial and, therefore, harmless. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.